IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  06-cv-02358-WYD-KLM

RAYMOND BONANNO, et al.,

      Plaintiffs,

v.

THE QUIZNO'S FRANCHISE COMPANY LLC, et al.,

      Defendants.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

      THIS MATTER comes before the Court on the Defendants' Motion to Dismiss

the Amended Complaint (docket #103), filed August 27, 2007.  The Plaintiffs filed a

response and the Defendants filed a reply in support of their motion.  After carefully

considering the pleadings submitted by both parties, and for the reasons stated below, I

find that Defendants' motion to dismiss must be denied.

II.    <u>BACKGROUND</u>

      On February 16, 2006, this case was originally filed in New Jersey State Court.

On March 24, 2006, the Defendants removed it to the United States District Court for

the District of New Jersey on the basis of federal diversity jurisdiction pursuant to the

Class Action Fairness Act of 2005 and 28 U.S.C. § 1453.  On November 17, 2006,

Judge Cavanaugh, of the District of New Jersey, denied Defendants' motion to dismiss

and transferred the case to this Court pursuant to the forum selection clause in the

franchise agreement.

Here, the Plaintiffs assert eight (8) claims for relief, and the Defendants have moved to dismiss all of them.[1]  Two of the claims are based on fraud.  One claim asserts statutory rights under the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.* ("CCPA"), and the other claim asserts common law fraud stemming from the Defendants' fraudulent inducement of the Franchise Agreements.  (Am. Compl. ¶¶ 81-102.)  Three of the claims are contractual in nature and assert breach of contract, breach of the implied covenant of good faith and fair dealing, and an alternative equitable claim for unjust enrichment.  (Am. Compl. ¶¶ 103-137.)  Plaintiffs also ask the Court to declare the Franchise Agreements procedurally and substantively unconscionable pursuant to 28 U.S.C. § 2201 *et seq.*  Finally, Plaintiffs allege economic duress with respect to certain plaintiff representatives who were forced by the Defendants to execute documents that the Defendants assert release them from any wrongdoing.  (Am. Compl. ¶¶ 123-131.)

By way of background, this is a class action brought by certain franchisees of the Quiznos toasted submarine sandwich shop restaurant chain arising out of the alleged "illegal business scheme of Quiznos and its web of affiliated entities and individuals who control and operate the Quiznos franchise system."[2]  (Am. Compl. ¶

---

[1] In their Response, the Plaintiffs state that their Sixth Claim for Relief - Common Law Conspiracy, is voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a).

[2] On January 31, 2008, the Plaintiffs filed a Motion for Class Certification, which is currently pending before this Court.  The Plaintiffs allege that the named Plaintiffs represent a putative class of thousands.

20.)  Through this scheme, the Plaintiffs allege that the Defendants fraudulently induced them "to purchase franchises for between $20,000-25,000 per franchise when it knew that the franchisees would never receive anything in return for their franchise fees."  (Am. Compl. ¶ 20.)  Plaintiffs further allege that "Quiznos took the franchise fee from more than 3,000 franchisees and has failed to provide a store for them.  In a fraudulent effort to convert the franchise fees, Quiznos blames the franchisee for the failure to open the store, and citing a breach of the franchise agreement, refused to return the funds."  (Am. Compl. ¶ 20.)

Plaintiffs' 40-page Amended Complaint includes, among other things, allegations that the Defendants failed to disclose the franchise opportunity as required by law, resold trade areas (sometime to multiple franchisees), and intentionally concealed the fact that the large majority of franchises sold to franchisees would never be open for business.  (Am. Compl. ¶¶ 31-40.)  Plaintiffs further allege that Quiznos collected approximately $75 million in franchise fees while providing nothing to the franchisees in return.  (Am. Compl. ¶ 43.)  Once Quiznos collected the franchise fee, Plaintiffs assert that Quiznos refused to return any portion despite the franchisee's inability to secure a franchise location within twelve (12) months of signing the Franchise Agreement.  (Am. Compl. ¶ 33.)  Plaintiffs allege that this "scheme goes all the way to the top of the organization."  (Resp. at 2.)  In the Amended Complaint, Plaintiffs state that "Defendant Rick Schaden, when recently asked about the problem of repeated sales of the same unit in Phoenix, Arizona, stated words to the effect, 'sell the area again.'"  (Am. Compl. ¶ 34.)  Plaintiffs allege that this deceptive conduct "has been institutionalized by

Quiznos and has become a part of the way it does business, to the detriment of thousands of hapless franchisees around the United States." (Resp. at 2.)

III.   STANDARD OF REVIEW

In ruling on a Motion to Dismiss pursuant to 12(b)(6), the standard used to be that the court "'must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)).  Thus, until recently, a dismissal was only warranted where "it appear[ed] beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *The Ridge at Red Hawk, L.L.C. v.Schneider*, 2007 WL 1969681 at *3 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"However, the Supreme Court recently decided that 'this observation has earned its retirement,' and it has prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007)).  "The Court explained that a plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss."  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1974).  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Id.*

IV.   ANALYSIS

A.   Plaintiffs' First Claim for Relief - Violation of the Colorado Consumer Protection Act ("CCPA")

Plaintiff's first claim for relief alleges a violation of the CCPA for unfair or deceptive trade practices against all Defendants.  The Defendants have moved to dismiss this claim asserting three arguments in support of their request.  First, the Defendants argue that the Plaintiffs lack standing to sue under the CCPA.  Second, the Defendants argue that the Plaintiffs' allegations do not sufficiently allege conduct establishing that the Defendants engaged in unfair or deceptive trade practices.  Finally, the Defendants claim that the challenged conduct does not allege an injury to the public at large such that the alleged injuries are compensable under the remedial scheme as set forth in the CCPA.

1.   CCPA

The Colorado Supreme Court has stated that the "CCPA was enacted to regulate commercial activities and practices which, 'because of their nature, may prove injurious, offensive, or dangerous to the public.'"  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003).  The *Rhino Linings* Court went on to say that "[t]he CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud."  *Id.*  These "[r]emedies include injunctive relief, civil penalties including treble damages, and attorney fees."  *Id.*

The Colorado Supreme Court in *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)

stated that in order for a plaintiff to sustain a private cause of action under the CCPA, he must show:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*See also Martinez v. Lewis*, 969 P.2d 213, 221 (Colo. 1998). The CCPA is not limited to "consumers" but to anyone that can meet the above elements. *Hall*, 969 P.2d at 231.

### 2. Whether Plaintiffs Have Standing to Sue Under the CCPA

In the motion, the Defendants first argue that the Plaintiffs do not have standing to assert a claim under the CCPA because they are non-Colorado citizens who are challenging conduct "in their respective home states." (Mot. at 8.) I disagree and reject this argument.

The allegations in the Amended Complaint clearly establish that all of the Defendants are either citizens of Colorado or have their principal places of business in Colorado. (Am. Compl. ¶¶ 14-19.) The Plaintiffs allege that the Defendants, acting within the state of Colorado, committed acts of fraud on the Plaintiffs. (Am. Compl. ¶¶ 28-33.) While the Plaintiffs reside in New Jersey, Connecticut, California, Texas, New York, and Washington, the allegations of the fraudulent scheme involve the Defendants' conduct in the state of Colorado. The Defendants' principal place of business in is Colorado, and it is reasonable to conclude that many, if not all, of the

corporate decisions and activities including the creation of the franchise agreement, creation of the advertising of franchise opportunities, and the drafting of franchise documents occurred in Colorado.

Moreover, I am not persuaded by the cases cited by the Defendants in their motion. The cases cited by the Defendants are distinguishable to the case at hand in that they stand for the proposition that the State of Colorado may not regulate conduct in outside states. Here, the Plaintiffs allege that the Defendants have perpetuated a fraud arising out of business practices conducted in Colorado by a Colorado company. The alleged deceptive trade practices resulted from corporate policies and decisions instituted in Colorado. After reviewing the allegations set forth in the Amended Complaint in the light most favorable to the Plaintiffs, I find that the Plaintiffs have standing to sue under the CCPA.

3.   Whether Plaintiffs Sufficiently Allege Unfair or Deceptive trade
      Practices Under the CCPA

Second, the Defendants argue that the Plaintiffs fail to sufficiently allege conduct that demonstrates that the Defendants engaged in unfair and deceptive trade practices as set forth by the CCPA. "Section 6-1-105(1)(e) [of the CCPA] requires that to establish a deceptive trade practice, the plaintiff must show that a defendant 'knowingly makes a false representation.'" *Rhino Linings*, 62 P.3d at 147. The *Rhino Linings* Court went on to conclude "that a false representation must either induce a party to act, refrain from action, or have the capacity or tendency to attract consumers." *Id.* Therefore, in order for a plaintiff to establish a deceptive trade practice set forth in § 6-

1-105(1)(e), he must establish "either a misrepresentation or that the false representation had the capacity or tendency to deceive, even if it did not." *Id.* at 148.

In the Amended Complaint, Plaintiffs' set forth detailed allegations of misrepresentations or false representations that induced the Plaintiffs to act. Specifically, paragraphs 84-88 of the Amended Complaint read as follows:

> 84. More specifically, Quiznos knew at the time it induced thousands of franchisees into signing franchise agreements that there was little to no likelihood that the franchisee would ever receive any benefit from paying the franchise fee, let alone that the franchisee would actually open a Quiznos store and become operational. Quiznos intentionally or recklessly concealed this information so it could increase the number of franchises it could sell.

> 85. Quiznos knew at the time of contracting that there was little to no likelihood that a franchisee could be operational in the twelve-month period afforded under the contract. Quiznos intentionally concealed this information so it could increase the amount of franchises it could represent to the public it had sold.

> 86. Quiznos induced franchisees to purchase trade areas that the franchisees were led to believe could support a Quiznos' franchise, and then Quiznos would coerce the franchisee to switch areas, enabling Quiznos to re-sell the same trade area to a new franchisee. Quiznos routinely engaged in this method of "bait and switch" with respect to thousands of franchisees.

> 87. Quiznos intentionally failed to disclose the inherent conflict of interest between its franchisees and its employees and thereby allowed a baseless sense of trust and confidence to develop between Quiznos and the franchisees.

> 88. Quiznos exploited the fact that there exists a substantial imbalance of power between Quiznos and the Plaintiffs, which imbalance allows Quiznos to implement the business

> scheme described in detail herein and incorporated by
> reference.

(Am. Compl. ¶¶ 84-88.)  Additionally, Plaintiffs include detailed allegations with respect

to each named Plaintiff as to how he or she was induced to purchase a Quiznos

franchise based on false representations by the Defendants.  (Am. Compl. ¶¶ 58-68.)

After reviewing the allegations set forth in the Amended Complaint in the light most

favorable to the Plaintiffs and guided by the applicable law, I find that Plaintiffs'

Amended Complaint contains enough facts to state a claim for unfair or deceptive trade

practices under the CCPA that is plausible on its face.

       4.    <u>Whether Plaintiffs' Allegations Establish a Common Practice that</u>
<u>Significantly Impacts the Public as Actual and Potential Consumers</u>
<u>of Defendants' Goods</u>

      Third, the Defendants argue that the Plaintiffs do not allege a public injury to

consumers as a whole, which is required under the CCPA.  The Colorado Supreme

Court has held that in order to bring a claim pursuant to the CCPA, a plaintiff must

establish not only that the defendant engaged in a deceptive trade practice, but also

that the defendant's challenged practice significantly impacts the public as actual or

potential consumers of the defendant's goods, services, or property.  *Hall*, 969 P.2d at

234.  "Thus, if a wrong is private in nature, and does not affect the public, a claim is not

actionable under the CCPA."  *Rhino Linings*, 62 P.3d at 149.  In *Martinez v. Lewis*, 969

P.2d 213, 221 (Colo. 1998), the Colorado Supreme Court outlined the relevant

considerations in determining whether a challenged practice significantly impacts that

public within the context of a CCPA claim.  "These considerations include (1) the

number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings*, 62 P.3d at 149.

Based upon my careful review of the Amended Complaint, I find that the Plaintiffs satisfy the aforementioned considerations. First, Plaintiffs allege that there are over 3,000 consumers affected by the challenged conduct. Specifically, paragraph 20 of the Amended Complaint states that "Quiznos took the franchise fee from more than 3,000 franchisees and has failed to provide a store to them." (Am. Compl. ¶20.) Second, Plaintiffs allege disparate bargaining power and sophistication between the parties. Paragraph 32 of the Amended Complaint states in part that "[p]laintiffs had no opportunity to negotiate the terms of these [Franchise] agreements." (Am. Compl. ¶ 32.) Finally, Plaintiffs clearly allege that the challenged conduct has impacted and will continue to impact large numbers of consumers who may consider purchasing a Quiznos franchise. After viewing the allegations in the light most favorable to the Plaintiffs, I find that this is not an action designed to address a purely private wrong. I further find that the Plaintiffs have alleged sufficient facts to satisfy the requirements set forth in the CCPA. Accordingly, Defendants' motion to dismiss the CCPA claim is denied.

B.    Plaintiffs' Second Claim for Relief - Fraudulent Inducement

In their motion, the Defendants argue that Plaintiffs' claim of fraudulent

inducement should be dismissed for failure to state a claim.  In order to establish a claim for fraudulent inducement, the Plaintiffs must plead and prove the following: (1) the Defendants made a knowing misrepresentation of a material fact; (2) the Plaintiffs relied on the material misrepresentation; (3) the Plaintiffs were justified in relying on the misrepresentation; and (4) the Plaintiffs suffered damages as a result of that reliance. *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. App. 2003) (*citing Nielson v. Scott*, 53 P.3d 777 (Colo. App. 2002).  Additionally, in order to establish a claim for fraudulent concealment, the Plaintiffs must plead and prove the following: (1) "concealment of a material fact that in equity and good conscience should be disclosed"; (2) "knowledge on defendant's part that such a fact is being concealed"; (3) "ignorance of that fact on plaintiff's part"; (4) "the intention that the concealment be acted upon"; and (4) "action on the concealment resulting in damages."  *Id.* at 399-400.

Turning to my analysis, I note that Fed. R. Civ. P. 9(b) provides that "[in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  *Id.*  This particularity requirement applies to common law fraud claims.  *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994).  However, the Tenth Circuit has cautioned that "Rule 9(b) does not, however, require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind."  *Monus v. Colorado Baseball 1993, Inc.*, 1996 WL 723338 *3 (10th Cir. 1996).  Rule 9(b) "only requires identification of the circumstances constituting fraud or mistake.  That requirement means . . . that individual plaintiffs . . . designate the occasions on which affirmative misstatements

were allegedly made to them - and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them - and how." *Id.*

After reviewing the Amended Complaint, I find that Plaintiff has alleged sufficiently particular facts that, if accepted as true, adequately and plausibly assert fraudulent inducement. In paragraphs 92-102 of the Amended Complaint, Plaintiffs allege numerous instances of fraud. The Plaintiffs further include the specific Defendants alleged to have made misrepresentations and the circumstances surrounding those instances. Therefore, I find that the Plaintiffs have set forth with sufficient particularity: (1) what misrepresentations were made; (2) which Defendants made them; (3) to whom the misrepresentations were made; (4) when the misrepresentations were made; or (5) how the misrepresentations furthered the alleged fraudulent scheme. (Am. Compl. ¶¶ 92-102.) Accordingly, Defendants' motion to dismiss the fraudulent inducement claim is denied.

C.    Plaintiffs' Third Claim for Relief - Breach of Contract

In their motion, the Defendants argue that the Plaintiffs fail to state a claim for breach of contract as a matter of law. "It has long been the law in Colorado that a party attempting to recover on a breach of contract claim must prove the following elements: (1) the existence of a contract . . . ; (2) performance by the plaintiff or some justification for nonperformance . . . ; (3) failure to perform the contract by the defendant. . .; and (4) resulting damages to the plaintiff. . . ." *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). The "performance" element means substantial performance,

which "occurs when, 'although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance, [the defendant] has received substantially the same benefit he expected and is, therefore, bound to pay.'" *Id.* (quoting *Newcomb v. Schaeffler*, 272 P.2d 409, 412 (1955)).

Based upon my careful review of the Amended Complaint, I find that the Plaintiffs have asserted sufficient facts to state a claim for breach of contract that is plausible on its face. First, the Plaintiffs allege the existence of a contract. (Am. Compl. ¶ 104.) Second, the Plaintiffs allege justification for non-performance of the contract (failing to open a Quiznos restaurant within twelve months of signing the franchise agreement). (Am. Compl. ¶¶ 33-41.) Third, the Plaintiffs allege with specificity that the Defendants failed to perform the contract. (Am. Compl. ¶ 105.) Finally, the Plaintiffs allege that "Defendants' breach of the franchise agreements was a substantial factor in causing Plaintiffs' damage." (Am. Compl. ¶ 106.) Accordingly, I find that the Plaintiffs have pled allegations to plausibly state a claim for breach of contract. Defendants' motion to dismiss Plaintiff's breach of contract claim is denied.

D.    Plaintiffs' Fourth Claim for Relief - Breach of the implied Covenant of Good Faith and Fair Dealing

In their motion, the Defendants also argue that the Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing. Colorado law imposes a duty of good faith and fair dealing in every contract. *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo.

1995)).  "A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract."  *City of Golden*, 138 P.3d at 292.  "The good faith performance doctrine attaches to contracts 'to effectuate the intentions of the parties or to honor their reasonable expectations.'"  *Id.* (quoting *Amoco Oil*, 908 P.2d at 498).  "The duty of good faith and fair dealing may be relied upon 'when the manner of performance under a specific contract term allows for discretion on the part of either party.'"  *Id.* (quoting *Id.*)  "Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party to set or control the terms of performance after formation."  *Id.*

Turning to my analysis, I find that the Plaintiffs have asserted sufficient facts to state a claim for breach of the implied covenant of good faith and fair dealing that is plausible on its face.  Here, the Plaintiffs allege that the Defendants failed to honor Plaintiffs' reasonable expectations expressed in the franchise agreement through the Defendants' abuse in the exercise of their discretion.  (Am. Compl. ¶ 33.)  Plaintiffs allege that their reasonable expectations include: (1) that Plaintiffs' restaurants would become operational within twelve months; (2) that the Defendant would approve a location in a reasonable manner; (3) that the "trade areas" identified in each Plaintiff's Franchise Agreement were viable; and (4) that the Defendants would "provide site selection assistance, including having an experienced real estate team to help with site selection and lease negotiations."  (Am. Compl. ¶¶ 33, 41.)  Accordingly, I find that the Plaintiffs have pled allegations to plausibly state a claim for breach of the implied covenant of good faith and fair dealing.  Defendants' motion to dismiss Plaintiff's

breach of the implied covenant of good faith and fair dealing claim is denied.

E.    Plaintiffs' Fifth Claim for Relief - Unjust Enrichment

In their motion, the Defendants assert that the Plaintiffs fail to state a claim for unjust enrichment.  The test for unjust enrichment in Colorado requires proof that:  "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without repaying."  *DCB Construction Co., Inc. v. Central City Development Co.*, 965 P.2d 115, 119-20 (Colo. 1998) (en banc).  It is "a . . . claim in quasi-contract for money damages based upon principles of restitution."  *Id.* at 118.  Unjust enrichment "is an equitable remedy and does not depend on any contract, oral or written."  *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000) (en banc).  "The theory does not require any promise or privity between the parties. . . [r]ather, it is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another."  *Id.*  DCB held that "'injustice'" involves some form of improper conduct by the party to be charged."  *DCB*, 965 P.2d at 122.

Similar to my aforementioned analysis, after carefully reviewing the Amended Complaint, I find that the Plaintiffs have plead sufficient facts to state a plausible claim for unjust enrichment.  (Am. Compl. ¶¶ 114-115.)  Accordingly, Defendants' motion to dismiss this claim is denied.

F.    Plaintiffs' Seventh Claim for Relief - Economic Duress[3]

---

[3] As an initial matter, this claim is asserted by Plaintiffs Ali Naqvi and Preetinder Malhi. On January 31, 2008, Plaintiff Naqvi filed a Notice of Voluntary Dismissal Without Prejudice (docket #135) with the Court.  Accordingly, I will not address any claims asserted by Plaintiff

In their motion to dismiss, the Defendants argue that Plaintiff Malhi fails to state

a claim for economic duress. Under Colorado law, "[a] contract is voidable on the

grounds of duress if a party's manifestation of assent is induced by an improper threat

that leaves no reasonable alternative." *Vali/Arrowhead, Inc. v. District Court for the*

*Fifth Judicial Dist., Eagle County*, 954 P.2d 608, 612 (Colo. 1998). The *Vail/Arrowhead*

Court defined an improper threat as the following:

> (1) A threat is improper if
>> (a) what is threatened is a crime or a tort, or the
>> threat itself would be a crime or a tort if it resulted in
>> obtaining property,
>> (b) what is threatened is a criminal prosecution,
>> (c) what is threatened is the use of civil process and
>> the threat is made in bad faith, or
>> (d) the threat is a breach of the duty of good faith and
>> fair dealing under a contract with a recipient.
>
> (2) A threat is improper if the resulting exchange is not on
> fair terms, and
>> (a) the threatened act would harm the recipient and
>> would not significantly benefit the party making the
>> threat,
>> (b) the effectiveness of the threat in inducing the
>> manifestation of assent is significantly increased by
>> prior unfair dealing by the party making the threat, or
>> (c) what is threatened is otherwise a use of power for
>> illegitimate ends.

*Id.* at 612-13. "[A]n improper threat is one that is so shocking that the court will not

inquire into the fairness of the resulting exchange, or a threat in which the impropriety

consists of the threat in combination with resulting unfairness." *Id.* at 613.[4] However,

---

Naqvi as they have been dismissed against all Defendants.

[4] Colorado courts have illustrated the following modern examples of the application
of the doctrine of duress. *See Pittman v. Larson Distribution Co.*, 724 P.2d 1379, 1384 (Colo.

the *Vail/Arrowhead* Court cautioned that "it is important to distinguish exchanges between parties with relatively equal bargaining power from unfair exchanges permitting judicial intervention. . . ." *Id.* "An improper threat does not constitute economic duress if the victim fails to pursue a reasonable alternative but instead yields to the threat." *Id.*

Guided by the relevant law, I find that Plaintiff Malhi has sufficiently alleged a claim for economic duress in the Amended Complaint. Plaintiff Malhi alleges that he was coerced to sign a termination agreement, and that the Defendants induced the execution of the termination agreement by an improper economic threat with no reasonable alternative. (Am. Compl. ¶¶ 126, 130). Plaintiff Malhi alleges that the Defendants' improper economic threat involved "being required to sue Quiznos in Colorado over a $25,000 claim; or in the alternative, be sued by Quiznos in Colorado for a breach of contract and fifteen year's worth of royalties." (Am. Compl. ¶ 130.) Accordingly, after carefully reviewing the allegations in the Amended Complaint, I find that Plaintiffs have sufficiently stated a plausible claim for economic duress. Thus, Defendants' motion to dismiss Plaintiffs' economic duress claim is denied.

G.    Plaintiffs' Eighth Claim for Relief - Declaratory Judgment

In Count Eight of the Amended Complaint, Plaintiffs request a declaratory

---

App. 1986) (holding that an employer's threat to blacklist an employee in an industry unless the employee consented to a modified employment contract with less favorable terms was duress because such blacklisting was a misdemeanor and therefore, "improper"); *Wiesen v. Short*, 604 P.2d 1191, 1192 (Colo. 1979) (holding that a creditor was not placed under duress by threat of bankruptcy and other "business compulsion," especially because the creditor had the advice of an attorney and an opportunity to reflect on the decision).

judgment that the Quzinos Franchise Agreements, signed by the Plaintiffs, are unconscionable, void and unenforceable. In the alternative, the Plaintiffs request that I strike the provisions of the Franchise Agreement that are unenforceable. (Am. Compl. ¶ 137.) In their motion to dismiss, the Defendants assert that the Plaintiffs failed to establish that the Franchise Agreements are unconscionable adhesion contracts.

"A finding of unconscionability is a question of law. Section 4-2-302(1), C.R.S." *Leprino v. Intermountain Brick Co.*, 759 P.2d 835, 836 (Colo. App. 1988). "In order to support a finding of unconscionability, there must be evidence in the record of some overreaching on the part of one of the parties, such as that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of the second party, together with contract terms unreasonably favorable to the first party." *Id.* (citing *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986). "Factors which have been found relevant to the unconscionability determination include: a standardized agreement executed by parties of unequal bargaining strength, . . . lack of opportunity to read or become familiar with the document before signing it, . . . use of fine print in the portion of the contract containing the provision, . . . absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated, the terms of the contract, including substantive unfairness, . . . the relationship of the parties, including factors of assent, unfair surprise and notice, . . . and all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect." *Id.*

Turning to my analysis, I find that the Plaintiffs have plead sufficient allegations

to assert a plausible claim for a declaratory judgment.  (Am. Compl. ¶¶ 132-137.)

Moreover, Defendants' argument to dismiss this claim is premature.  There is no

evidence in the record at this stage of the litigation with respect to whether or not the

franchise agreements are unconscionable.  *Leprino*, 759 P.2d at 836.  Accordingly,

Defendants' motion to dismiss Plaintiff's claim for a declaratory judgment is denied.

     H.   <u>Miscellaneous Issues</u>

          1.   <u>Whether the Court should Strike the Jury Demand</u>

In their motion, the Defendants assert that the Plaintiffs are not entitled to a jury

trial pursuant to "their clear and unequivocal waiver of the same in the Franchise

Agreement . . ."  (Mot. at 25.)  It is well established in the Tenth Circuit that agreements

waiving the right to trial by jury are neither illegal nor contrary to public policy.  *Telum,*

*Inc. v. E.F. Hutton Credit Corp.*, 859 F .2d 835, 837 (10th Cir.1988) (citations omitted).

The burden of proving a voluntary and knowing waiver is on the party seeking to

enforce the waiver.  *See, e.g., Phoenix Leasing Inc. v. Sure Broadcasting, Inc.*, 843

F.Supp. 1379, 1384 (D.Nev.1994).  In determining the validity of such a waiver, another

court in this district has found helpful the non-exclusive factors summarized in *Allyn v.*

*Western United Life Assurance Co.*, 347 F.Supp.2d 1246 (M.D.Fla.2004).  *See Postnet*

*Int'l Franchise Corp. v. Amercis Int'l, Inc.*, Case No. 06-cv-00125-PSF-BNB 2006 WL

1775599 (D. Colo. June 26, 2006).  These factors include: (1) the conspicuousness of

the provision in the contract; (2) the level of sophistication and experience of the

parties entering into the contract; (3) the opportunity to negotiate terms of the contract;

(4) the relative bargaining power of each party; and (5) whether the waiving party was

represented by counsel.  *Allyn*, 347 F.Supp.2d at 1251.

Similar to my analysis in the previous section of this order, I find that this request is premature.  There is no evidence in the record at this stage of the litigation in connection with the validity of the Plaintiffs' waiver of their right to a jury trial in the franchise agreement.  Thus, this request is denied.

2.     <u>Whether the Court Should Sever the Plaintiffs and Strike their respective Demands for punitive Damages</u>

The Defendants argue that "the Plaintiffs should be severed and not permitted to bring their claims together and the Court should also strike Plaintiffs' various demands for punitive damages."  (Mot. at 26.)  This argument involves the issue of whether the franchise agreement is unconscionable.  Therefore, based on my previous analysis, Defendants' request is denied.

3.     <u>Whether the Schadens Should be Dismissed</u>

The Defendants argue that neither Richard E. Schaden nor Richard F. Schaden should be held individually liable for any claims asserted by the Plaintiffs.  The Defendants cite to a provision in the franchise agreement that states that the Plaintiffs will not advance claims arising out of the franchise agreement against any individual employees and agents of Quiznos.  Again, this argument involves the issue of whether the franchise agreement is unconscionable.  Therefore, based on my previous analysis, Defendants' request is denied.

V.     <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Defendants' Motion to Dismiss the Amended Complaint (docket #103), filed August 27, 2007, is **DENIED.**

Dated:  March 5, 2008

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge