IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02358-WYD-KLM

RAYMOND BONANNO,
ANTHONY BONANNO,
ROBERT PETER,
RAJAN DESAI,
NISHA DESAI,
ELISA WHITEHALL,
DAJIT PARMAR,
MANJIT PARMAR,
IRVING BROTHMAN,
JOANNE KJOLSEN,
KRISTI LEWIS.
MEGAN MAKKI,
MUKAND MALHI,
PREETINDER MALHI,
ALI NAQBI,
ANDRZEJ SLIWOWSKI,
RICHARD VARRADO,
BARTON CLATT,

    Plaintiff(s),

v.

THE QUIZNO'S FRANCHISE COMPANY, LLC,
QUIZNO'S FRANCHISING, LLC,
QUIZNO'S FRANCHISING II, LLC,
QFA ROYALTIES, LLC.,
RICHARD E. SCHADEN,
RICHARD F. SCHADEN,
TQCS LLC,

    Defendant(s).
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion for Protective Order** [Docket No. 172; filed February 20, 2008] (the "Motion for Protective Order"). The Court has reviewed the Motion for Protective Order, Plaintiffs' Response [Docket No. 176; filed March 6, 2008], Defendants' Reply [Docket No. 182; filed March 21, 2008], the documents produced by Defendants for *in camera* review, the entire case file and applicable case law and is sufficiently advised in the premises. Accordingly, IT IS HEREBY **ORDERED** that the Motion for Protective Order is **GRANTED IN PART AND DENIED IN PART**, as set forth below.

A.  Background

This is a putative class action suit in which Plaintiffs assert claims arising out of Defendants' retention of certain franchise fees paid by franchisees who have not opened their restaurants within the time-frames established by their franchise agreements. *Motion for Protective Order* [#172], p. 1. In Defendants' vernacular, these franchisees are referred to as Sold Not Open ("SNOs"). *Id.* at 2. During the course of discovery, Defendants inadvertently produced six[1] documents, Bates numbered Q-Bonan-189-222, which they now assert are protected by the attorney-client privilege and the work product doctrine.

The documents at issue were created by Michael Daigle, who served as

---

[1]Defendants initially asserted that a seventh document, Bates Numbered 217-218, was protected by the work product doctrine, but have now apparently withdrawn their objection.

Defendants' general counsel until October 2006. *Id.* at 3. In October 2006, Mr. Daigle became Defendants' Executive Vice President of Development, a job which encompassed primarily business functions. *Id.* In April 2007, Mr. Daigle moved to the head of Defendant's international development department as the Executive Vice President of International Development, the role in which he currently works. *Id.* Defendants assert that Mr. Daigle's current role "involves both legal and business aspects and regularly includes provision of legal advice and counseling to the company regarding the international business." *Id.*

In April 2007, Mr. Daigle was given the project of SNO management. Defendants contend that he was "chosen to head up this project as an attorney. The job involved legal analysis and advice in connection with SNOs and included issues relating to this litigation, which was pending at that time. The management of the company requested that Mr. Daigle review the legal issues and contractual provisions at issue with respect to the SNOs and claims asserted in the case. The management requested that he opine on the same and develop a plan to address the SNOs and contingencies for the myriad of different situations and issues that relate to each one." *Id.*

During the course of the SNO management project, Mr. Daigle created the documents at issue – six PowerPoint® presentations. *Id.* at 4. These presentations were given by Mr. Daigle to Quiznos' management as well as a group of Quiznos Area Directors, independent contractors who act as agents of Quiznos in selling franchise agreements and assisting franchisees. *Id.* Defendants assert that the PowerPoint®

3

presentations were "created for the purposes of advising Quiznos' management on a legal course of action. The documents were treated as confidential and only disseminated to those people with a specific need to know the contents." *Id.* (citations omitted). Defendants now seek a protective order with regard to these six documents.

**B.    Analysis**

Fed. R. Civ. P. 26(b) permits discovery "regarding any matter, *not privileged*, that is relevant to the claim or defense of any party" and discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  *See also Williams v. Board of County Commissioners*, 192 F.R.D. 698, 702 (D. Kan. 2000) (request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense). By excluding "privileged" information from the broad parameters of pre-trial discovery, Rule 26 attempts to strike a balance between conflicting interests.  Defendants assert that both the attorney-client and work-product privileges protect the documents at issue in this case. Because jurisdiction in this action is based on diversity of citizenship, Colorado state law applies to issues of attorney-client privilege.  *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998).

**1.    Attorney-Client Privilege**

The attorney-client privilege in Colorado is codified in pertinent part as follows: "An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional

4

employment . . . ." C.R.S. § 13-90-107(1)(b).  "The privilege extends to confidential communications by or to the client in the course of gaining counsel, advice, or directions with respect to the client's rights or obligations."  *Mountain States Tel. & Tel. Co. v. DiFede*, 780 P.2d 533, 541 (Colo. 1989) (citations omitted).  Further, "the privilege applies only to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential."  *Lanari v. People*, 827 P.2d 495, 499 (Colo. 1992).  Statements of fact are not protected by the attorney-client privilege.  *See Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2003) (noting that "the privilege protects only the communications to the attorney; it does not protect any underlying and otherwise unprivileged facts that are incorporated into a client's communication to his attorney").

Plaintiffs argue that the "attorney-client privilege is not intended to protect materials prepared in the ordinary course of business from discovery."  *Response* [#176], p. 7. Plaintiffs assert that the "guiding principle in such cases in whether, in engaging in the communications in question, the attorney was acting in a business capacity or acting as an attorney."  *Id.* at 8.  Defendants argue that the documents at issue were indeed created by Mr. Daigle in his legal capacity for the purpose of providing legal advice.  *Reply* [#182], p. 2.

In *National Farmers Union Prop. & Cas. Co.*, 718 P.2d 1044, 1049 (Colo. 1986), the Colorado Supreme Court analyzed the factors set out in *Upjohn Co. v. United States*, 449 U.S. 383, 394-95 (1981) in the context of applying the attorney-client privilege to an internal investigation conducted by corporate counsel into issuance of an insurance policy.

5

The *National Farmers* court found that the attorney-client privilege did not apply to the memorandum at issue, as:

> The attorneys' activities . . . consisted of conducting interviews with various officers and employees for the purpose of determining the factual circumstances underlying the issuance of the policy. In this respect, the attorneys were acting more in the role of claims investigators than legal counsel . . . . Second, the dominant purpose of the interviews . . . was to provide the company with the factual circumstances underlying the issuance of the policy. Third, there is an absence of any showing . . . that those persons questioned were ever informed that the attorneys were acting as company counsel or that the purpose of the investigation was to allow the company to obtain legal advice. Finally, there is no indication that the employees were ever told that the investigation was confidential."

*Id.* at 1049.

Applying the *National Farmers* analysis to the case at hand, it appears that all or a portion of some of the documents are protected by attorney-client privilege. First, Mr. Daigle states that his involvement in the SNO management project required that he "review legal issues and contract provisions with respect to the SNOs and the claims asserted in this case." *Motion for Protective Order* [#172], Ex. 1, p. 2. Upon review of the documents provided for *in camera* review, I find that Mr. Daigle was, in significant part, acting in his legal capacity and not simply in an investigatory or business capacity. Second, the "dominant purpose" of many of the communications appears to have been to provide legal advice and strategy to the corporation, although business advice and strategy are also incorporated into Mr. Daigle's presentations. *National Farmers Union Prop. & Cas. Co.*, 718 P.2d at 1049. Third, Mr. Daigle states that during communications with an SNO, which apparently form the basis for some of the information provided in the documents at issue,

6

he would "advise the SNO that he was acting as a lawyer and that [he] could not communicate with them directly if they were represented by counsel." *Motion for Protective Order* [#172], Ex. 1, p. 3. Finally, Mr. Daigle states that the documents created were treated as confidential and were "only disseminated to those people with a specific need to know the contents." *Id.* at 4. I find that Defendants have satisfied the elements of the attorney-client privilege as set forth in *National Farmers*.

In *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130 (Colo.App. 1998), the Court held that "if a lawyer is acting in an investigative capacity, and not as a legal counselor, with reference to whether an insurance claim should be paid, then neither the privilege created by this statute nor the work product privilege protects communications from a lawyer to an insurance carrier." (citing *National Farmers Union Prop. & Cas. Co.*, 718 P.2d 1044). In *Munoz*, the Court found it important that the party asserting the privilege presented no evidence as to the role the lawyer was playing at the time that the documents at issue were created or as to the circumstances surrounding the lawyer's recommendation on the insurance claim. *Id.* Unlike the situation presented in *Munoz*, Defendants have presented ample evidence regarding the role that Mr. Daigle was playing at the time that the documents at issue were created, as well as evidence that the documents were created in the context of on-going litigation. 968 P.2d at 130.

Accordingly, under the guidelines set forth in *National Farmers* and *Munoz*, I find that the attorney-client privilege applies to the documents created by Mr. Daigle that contain legal advice, and that are not mere statements of the facts compiled during the

course of the SNO management project.

Having concluded that the attorney-client privilege is applicable to many of the documents, the Court must now consider Plaintiffs' argument that Defendants have "failed to demonstrate that the recipients of the information were 'clients' for purposes of [invoking] the privilege." *Response* [#176], p. 11. The documents at issue were presented to both Defendants' senior management and Area Directors. Defendants state that the Area Directors are "independent contractors who act as Quiznos agents in selling franchise agreements and assisting franchise owners in specific geographic regions." *Reply* [#182], p. 182.

The Colorado Supreme Court addressed the applicability of the attorney-client privilege to independent contractors in *Alliance Const. Solutions, Inc. v. Dep't of Corrections*, 54 P.3d 861, 869-70 (Colo. 2002). The *Alliance* test requires that (1) "the information-giver [or receiver] must be an employee, agent, or independent contractor with a significant relationship not only to the [employer] but also to the transaction that is the subject of the [employer's] need for legal services"; (2) "the communication was made for the purpose of seeking or providing legal assistance"; (3) "the subject matter of the communication was within the scope of the duties provided to the entity by its employee, agent, or independent contractor"; and (4) "the communication was treated as confidential and only disseminated to those persons with a specific need to know its contents." *Id.*

The first *Alliance* element requires that Defendants show that "the information-giver [or receiver] [is] an employee, agent, or independent contractor with a significant

8

relationship not only to the [employer] but also to the transaction that is the subject of the [employer's] need for legal services . . . ." 54 P.3d at 869. Defendants state that the area directors are "agents of Quiznos and act as salespeople for the Quiznos franchises." *Reply* [#182], p. 8. Defendants further state that "the Area Directors are directly involved in the sale of franchises . . . . The Area Directors were participants in the course of action that Mr. Daigle advised Quiznos management could be taken." *Id.* at 9. Based on this information, the Court finds that the Area Directors are independent contractors with a significant relationship both to Defendants and to the transaction that was the subject of Defendants' need for legal services, the SNO management project.

The second element requires that Defendants show that "the communication was made for the purpose of seeking or providing legal assistance . . . ." *Alliance Const. Solutions, Inc.*, 54 P.3d at 869. Defendants have alleged that the presentations were given for the purposes of providing legal assistance, as Mr. Daigle was advising the Defendants as to the legal course of action that should be taken with respect to the SNOs. The Court finds that this satisfies the second *Alliance* element.

Third, Defendants must show that "the subject matter of the communication was within the scope of the duties provided to the entity by its employee, agent, or independent contractor . . . ." *Id.* The Court finds that this element has been satisfied, as Defendants allege that the Area Directors sell franchises and assist in store openings, making the subject matter of the communication – the SNOs – within the scope of the duties provided to Quiznos by the Area Directors.

Finally, Defendants must show that the documents were treated as confidential. *Id.* at 870. Defendants have alleged that the documents were treated as confidential, and only provided to those with a specific need to know their contents. They state that "Mr. Daigle disseminated the documents to two groups . . . who need to know: management, to advise about and obtain approval for a legal course of action, and the Area Directors, to implement it." *Reply* [#182], p. 9.

Therefore, based on my evaluation of the above factors, I find that Defendants have satisfied each element of the *Alliance* test. Accordingly, the attorney-client privilege protects the communications between Mr. Daigle and the Area Directors that contain legal advice. The following documents or portions of the documents at issue are protected by the attorney-client privilege and may be withheld from production in their entirety or should be appropriately redacted:

Q-BONAN-000190: Redact third and fourth bullet points under "Methodology" beginning with "Began sending letters" and ending with "failure to open."

Q-BONAN-000191: Redact "Delayed Termination" and all subsequent verbage.

Q-BONAN-000196: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000197: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000198: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000199: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000200: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000204: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000205: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000206: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000207: Entire page is protected by attorney-client privilege and need not be produced:

Q-BONAN-000208: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000209: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000211: Redact fourth and fifth bullet points under "Methodology" beginning with "Began sending letters" and ending with "failure to open."

Q-BONAN-000213: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000214: Entire page is protected by attorney-client privilege and need

not be produced.

Q-BONAN-000215: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000216: Entire page is protected by attorney-client privilege and need not be produced.

Q-BONAN-000219: Redact "Delayed Terminations" and all subsequent verbage.

Q-BONAN-000222: Redact the paragraph at the top of the page beginning with "Reminder" and ending with "agreement." Redact entire second bullet point after "Key Milestones," beginning with "Activated" and ending with "release."

Although I find that certain portions of the documents are protected by attorney-client privilege and therefore need not be produced, for purposes of completeness and clarity, I also address the parties' arguments as to the applicability of the attorney work product doctrine.

### 2. Work Product Doctrine

Defendants' assertion that the disputed documents are protected by the attorney work-product doctrine raises issues that must be considered in addition to the attorney-client privilege issues addressed above. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 508 (1947) (attorney-client privilege does not apply to writings that reflect an attorney's mental impressions, conclusions, opinions, or legal theories); *In re Foster*, 188 F.3d 1259, 1272 (10th Cir. 1999) (work product is broader and distinct from attorney-client

privilege).  The application of the work product doctrine is governed by the uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3).[2]  *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 (10th Cir. 1998).

The party asserting work product must meet its burden of demonstrating that each of the subject documents was in fact prepared in anticipation of litigation.  *Grand Jury Proceedings v. U.S.*, 156 F.3d 1038, 1042 (10th Cir. 1998); *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 304 (D. Utah 2002).  The test to determine whether the document is protected from disclosure under Rule 26(b)(3) is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the *prospect* of litigation."  *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 173 (D.Colo. 1993) (citations omitted; emphasis in original).  However, "[b]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts within the product."  *Lifewise Master Funding*, 206 F.R.D. at 304.  Further, even if the resisting party meets the burden of showing that the work product doctrine applies, "it

---

[2] Fed. R. Civ. P. 26(b)(3) provides, in relevant part, "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if: (I) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."

nonetheless must produce the work product if the requesting party shows it has substantial need of the material and that it is unable without undue hardship to obtain the substantial equivalent of the material by other means." *Marcin Engineering, LLC v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 525 (D.Colo. 2003) (citations omitted).

Defendants argue that the instant litigation prompted Defendants' request that Mr. Daigle prepare the documents at issue. *Motion for Protective Order* [#172], at p. 9. Defendants assert that these documents "reflect the thoughts and strategies of an attorney as to how to deal with litigation." *Id.* Plaintiffs argue that the work product doctrine was "not intended to protect material prepared in the ordinary course of business from general discovery." *Response* [#176], at p. 15.

The privilege log submitted by Defendants illustrates that five of the documents at issue were created between May and August, 2007 (the other document - Bates No. 219-220 - is undated). *Motion for Protective Order* [#172], Ex. 3. The lawsuit at issue was filed on or about February 16, 2006 in the Superior Court of New Jersey, and removed to this Court on November 24, 2006 [Docket No. 25]. In his declaration, Mr. Daigle states that he was instructed to begin the SNO management project in April 2007, well after commencement of the instant litigation. *Motion for Protective Order* [#172], Ex. 2, p. 2. Accordingly, it can fairly be said that these documents were prepared due to the ongoing litigation involving the SNOs. *See Martin*, 150 F.R.D. at 173. Further, the Court need not analyze whether the substantial need/undue hardship

14

exception applies, as Plaintiffs make no assertion that they are entitled to the documents pursuant to that exception.

However, the work-product doctrine only protects the "attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts within the product." *Lifewise Master Funding*, 206 F.R.D. at 304. As such, I find that the following documents are protected by the work product doctrine:

Q-BONAN-000197: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000198: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000199: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000200: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000201: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000204: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000205: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000206: Entire page is protected by work product doctrine and need

not be produced.

Q-BONAN-000207: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000208: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000209: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000211: Redact fourth and fifth bullet points under "Methodology" beginning with "Began sending letters" and ending with "failure to open."

Q-BONAN-000213: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000214: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000215: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000216: Entire page is protected by work product doctrine and need not be produced.

Q-BONAN-000222: Redact the paragraph at the top of page, beginning with "Reminder" and ending with "agreement."  Redact entire second bullet point after "Key Milestones," beginning with "Activated" and ending with "release."

As set forth in more detail above, the attorney-client privilege and attorney work-product doctrine protect all or a portion of certain of the documents which are at issue in Defendants' Motion. Defendants need only produce those documents or portions thereof which are <u>not</u> protected by the attorney-client privilege or attorney work-product doctrine. Accordingly, IT IS HEREBY **ORDERED** that Defendants shall produce the following documents or portions of documents within **ten (10) days** of the date of this Order:

Bates No. Q-BONAN-000189: Entire page must be produced.

Bates No. Q-BONAN-000190: Entire page must be produced except the last two bullet points under "Methodology."

Bates No. Q-BONAN-000191: Entire page must be produced except the last bullet point entitled "Delayed Termination."

Bates No. Q-BONAN-000192 through Q-BONAN-000195: The entire pages must be produced.

Bates No. Q-BONAN-000202: Entire page must be produced.

Bates No. Q-BONAN-000203: Entire page must be produced.

Bates No. Q-BONAN-000210: Entire page must be produced.

Bates No. Q-BONAN-000211: Entire page must be produced except the last two bullet points under "Methodology."

Bates No. Q-BONAN-000212: Entire page must be produced.

Bates No. Q-BONAN-000219: Entire page must be produced except the last

bullet point entitled "Delayed Termination."

Bates No. Q-BONAN-000220: Entire page must be produced.

Bates No. Q-BONAN-000221: Entire page must be produced.

Bates No. Q-BONAN-000222: Entire page must be produced except the top paragraph and entire second bullet point under "Key Milestones."

IT IS FURTHER **ORDERED** that the documents submitted to the Court for *in camera* review are sealed and shall not be opened except by further Order of the Court.

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

Dated: April 18, 2008