IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-02358-CMA-KLM

RAYMOND BONANNO,
ANTHONY BONANNO,
ROBERT PETER,
RAJAN DESAI,
NISHA DESAI,
ELISA WHITEHALL,
DAJIT PARMAR,
MANJIT PARMAR,
IRVING BROTHMAN,
JOANNE KJOLSEN,
KRISTI LEWIS.
MEGAN MAKKI,
MUKAND MALHI,
PREETINDER MALHI,
ALI NAQBI,
ANDRZEJ SLIWOWSKI,
RICHARD VARRADO,
BARTON CLATT,

    Plaintiff(s),

v.

THE QUIZNO'S FRANCHISE COMPANY, LLC,
QUIZNO'S FRANCHISING, LLC,
QUIZNO'S FRANCHISING II, LLC,
QFA ROYALTIES, LLC.,
RICHARD E. SCHADEN,
RICHARD F. SCHADEN,
TQCS LLC,

    Defendant(s).
_____

**ORDER**
_____
**ORDER ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

1

This matter is before the Court on **Plaintiffs' Motion to Compel Deposition Testimony of Defendant Richard E. Schaden** [Docket No. 206; Filed September 26, 2008] (the "Motion"). The Court has reviewed the Motion, Defendants' Response [Docket No. 246; Filed October 16, 2008], Plaintiffs' Reply [Docket No. 248; Filed October 31, 2008], the entire case file and applicable case law and is sufficiently advised in the premises. Accordingly, IT IS HEREBY **ORDERED** that the Motion is **DENIED**, as set forth below.

I.  **Background**

This is a putative class action suit in which Plaintiffs assert claims arising out of Defendants' retention of certain franchise fees paid by franchisees who have not opened their restaurants within the time-frames established by their franchise agreements. Plaintiffs seek to compel the deposition testimony of former Quiznos' Chief Executive Officer, and current chairman, Richard E. Schaden. *Motion* [#206] at 1. Plaintiffs state that during Mr. Schaden's March 18, 2008 deposition, he refused to answer questions pertaining to the 2006 transaction in which an affiliate of JP Morgan acquired 49% of Quiznos' stock. *Id.* Plaintiffs argue these questions are relevant to their claims because "this transaction was the first fruit of Quiznos' fraudulent scheme to turn its owners–principally Rick Schaden and his father–into billionaires by selling the company after inflating its value by defrauding Quiznos franchisees." *Id.*

II. **Analysis**

Fed. R. Civ. P. 26(b) permits discovery "regarding any matter, not privileged, that

2

is relevant to the claim or defense of any party" and discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  *See also Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 702 (D. Kan. 2000) (request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense).  Considering that "[l]imitations on the discovery process necessarily conflict with the 'fundamental principle that the public . . . has a right to every man's evidence,'" the Federal Rules broadly define the scope of discovery.  *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)).  The Court may, however, forbid the disclosure or discovery, specify terms for the disclosure or discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters to protect a party from undue burden and expense.  *See* Fed. R. Civ. 26(c)(1).

**A.   Relevance**

As a threshold matter, the Court must consider whether the discovery sought is relevant to the subject matter of the litigation.  Pursuant to Fed. R. Civ. P. 26(b)(1), any discovery sought must be relevant.  Relevancy is broadly construed, and a request for discovery should be considered if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.  *See, e.g., Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001).  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of

3

relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  *Simpson*, 220 F.R.D. at 350 (citations omitted); *see also Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting discovery based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to the discovery of admissible evidence, or burdensome").  Further, the objecting party cannot "sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing." *Id.* (citation omitted).  However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *See Paradigm Alliance, Inc. v. Celeritas Tech., LLC,* 2008 WL 678700, at *2 (D. Kan. 2008) (unpublished decision) (citation omitted).

The documents submitted to the Court by Plaintiffs indicate that during his March 18, 2008 deposition, Plaintiffs asked Mr. Schaden a wide range of questions related to the 2006 transaction, including questions related to the possibility or potential terms of a future sale.  *Motion* [#206] at Ex. A; pgs. 9-10.  However, as all the parties' arguments in the instant motion are specifically directed towards discovery of information related to "evidence of Mr. Schaden's personal gain" from the 2006 transaction,  the briefing of the parties makes clear that this is the only information that is currently at issue. *Motion* [#206] at 4; *see also Response* [#246] at 2; *Reply* [#248] at 1.  As such, in making its ruling, the

4

Court has only considered the potential relevance, and confidentiality, of Mr. Schaden's financial gain in relation to the 2006 transaction.

Plaintiffs argue that information pertaining to Mr. Schaden's financial gain from the 2006 transaction is relevant, as "[e]vidence of Mr. Schaden's personal gain from the partial achievement of the scheme's objective goes directly to prove his motive in developing and implementing the scheme by showing the fact finder not only what was potentially at stake when the scheme was devised, but how much Mr. Schaden actually gained when it was pulled off." *Motion* [#206] at 4. Defendants argue that the amount of money that Mr. Schaden actually gained from the 2006 transaction is not relevant to Plaintiffs' claims "that Quiznos made misrepresentations or omissions or did not provide expected support to franchise owners in connection with the franchise owners' efforts to locate a site for their restaurant." *Response* [#246] at 3. Further, Defendants argue that this information is not relevant to Plaintiffs' damages theory, because that theory "has nothing to do with the value of some or all of a parent company to the franchisor or how much money an individual owner made in connection with a corporate transaction. Plaintiffs seek return of the initial franchise fee they paid to Quiznos when they signed up." *Id.* However, Plaintiffs continue to assert that "[s]howing exactly how many millions of dollars Mr. Schaden received from JP Morgan transaction reinforces plaintiffs' allegation that he and the other defendant had substantial financial motives to implement the fraudulent sales scheme that is at the heart of all plaintiffs' claims." *Reply* [#248] at 3.

Plaintiffs' Amended Complaint states claims for violation of the Colorado Consumer

5

Protection Act, fraudulent inducement, breach of contract, violation of the covenant of good faith and fair dealing, unjust enrichment, economic duress and declaratory judgment. *See Amended Complaint* [#89] at 27-38. Although Plaintiffs argue that information related to the 2006 transaction is relevant to illustrating Defendants' motives and intent, Plaintiffs' claims, as set forth in the Amended Complaint, do not require that Plaintiffs prove Defendants' motives or intent. *See Kelley v. New York Life Ins. and Annuity Corp.*, 2008 WL 5423343, at *3 (D. Colo. Dec. 30, 2008) (unpublished decision) (setting forth elements of breach of contract and violation of the covenant of good faith and fair dealing claims); *ADT Sec. Servs., Inc. v. Envision Telephony, Inc.*, 2008 WL 5064268, at *3 (D. Colo. Nov. 21, 2008) (unpublished decision) (setting forth elements of a claim brought pursuant to the Colorado Consumer Protection Act); *Builder MT LLC v. Zybertech Const. Software Servs.*, 2008 WL 4724146, at *5 (D. Colo. Oct. 24, 2008) (unpublished decision) (setting forth elements of unjust enrichment claim); *Netquote, Inc. v. Byrd*, 2008 WL 2552871, at *4 (D. Colo. June 17, 2008) (unpublished decision) (discussing elements of fraudulent inducement claim); *Vail/Arrowhead, Inc. v. Eagle County Dist. Ct.*, 954 P.2d 608, 612 (Colo. 1998) (discussing elements of an economic duress claim). Moreover, Plaintiffs primarily seek the return of their initial franchise fees as their damages in this action. *Id.* at 35. As such, the Court finds that the information related to the profits of the 2006 transaction has extremely questionable relevance to the claims asserted by Plaintiffs or their desired damages. Further, even were the Court to find this information relevant, the Court would protect it from discovery on the grounds of its confidential nature, as set forth below.

## B.   Confidentiality

As a preliminary matter, Defendants assert that because jurisdiction in this action is based on diversity of citizenship, the Court "must consider Colorado law governing the discovery of confidential or private information." *Response* [#246] at 5. However, Plaintiffs dispute that Colorado law is applicable here, and instead argue that the Court must consider federal law regarding confidentiality. *Reply* [#248] at 2.

First, it is undisputed that in a diversity case such as this, Colorado state law applies to issues of attorney-client privilege. *Trammel*, 445 U.S. at 47 n. 8; *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998). However, "there is no absolute privilege for trade secrets and similar confidential information," *Centurion Indus., Inc. v. Warren Steurer and Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981), and "[a] concern for protecting confidentiality does not equate to privilege." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 1246216, at *2 (D. Kan. Apr. 27, 2007) (unpublished decision). Further, in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984), the Supreme Court observed:

> The [civil discovery] Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action. Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties.

As such, even if the requested information is confidential, that would not automatically remove it from the scope of permissible discovery pursuant to Fed. R. Civ. P. 26(b)(1), assuming its relevance (a party may obtain discovery regarding any matter "not

privileged" that is relevant to the claim or defense of any party).  *See also Lobato v. Ford*, 2007 WL 3342598, at *4 (D. Colo. Nov. 9, 2007) (unpublished decision) ("the protection for privileged information afforded by Rule 26(b)(1) does not extend to 'confidential' information") (citations omitted).  Therefore, although Defendants have asserted confidentiality, this does not equate to an assertion of privilege.  Accordingly, whether the Court should apply Colorado law or federal law to the issue of confidentiality is not as clear cut as Defendants contend.

Discovery in federal court is governed by the Federal Rules of Civil Procedure, regardless of whether federal jurisdiction is based on federal question or diversity of citizenship.  *See Everitt v. Brezzel*, 750 F.Supp. 1063, 1065 (D. Colo. 1990).  Moreover, although there is no absolute federal discovery privilege for trade secrets or other, similar confidential information, the federal courts recognize a qualified evidentiary privilege for trade secrets and other confidential commercial information.  *See, e.g., Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340 (1979).  That is, this type of confidential information is not provided automatic protection against disclosure, but the courts are directed to weigh the claim of privacy against the need for disclosure.  *See id*. However, other than these general rules related to the confidentiality and protection of trade secrets and similar confidential commercial information, the Court's research has revealed no bright-line federal rule that instructs the Court as to the treatment of confidential financial information. Accordingly, considering that if a state doctrine promoting confidentiality does not conflict with federal interests, it may be taken into account as a

matter of comity, the Court finds it proper to consider any relevant state doctrines of confidentiality. *Gottlieb v. Wiles*, 143 F.R.D. 235, 237 (D. Colo. 1992) (citations omitted).

Pursuant to Colorado law, courts generally apply the three-part test set forth in *Martinelli v. Denver District Court*, 199 Colo. 163, 173-74 (Colo. 1980) to determine whether confidential information should be disclosed during discovery. *See, e.g., Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 720-21 (Colo. 1999). This test requires the court to consider:

> (1) whether the individual has a legitimate expectation of nondisclosure; (2) whether disclosure is nonetheless required to serve a compelling state interest; and (3) where a compelling state interest necessitates disclosure of otherwise protected information, how disclosure may occur in a manner which is least intrusive with respect to the right to confidentiality.

*Id.* (citing *Martinelli*, 199 Colo. at 174).

Although both parties refer to and apply the *Martinelli* test, the Court does not believe that Colorado law mandates that the *Martinelli* test be applied in a discovery dispute like the one at hand. *See Response* [#246] at 5-9; *Reply* [#248] at 4-7. That is, in *Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 157 (Colo. 2008), the Colorado Supreme Court recognized the "limited applicability of the *Martinelli* test," especially in those cases where one private party sought discovery of confidential financial information from another private party. In *Stone*, a case involving discovery of tax returns by private parties, the Colorado Supreme Court noted that, "[c]onsideration of a compelling *state* interest (i.e. the second prong of *Martinelli*) . . . . has little or no applicability, however, in a case where a private party is seeking the disclosure of another private party's [information]." 185 P.3d

9

at 158.  Accordingly, the *Stone* court affirmed that the test set forth in *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005), was more appropriately used in cases involving two private parties and the discovery of confidential information like that contained in tax returns.  *Stone*, 185 P.3d at 159.

The *Alcon* test, as set out in *Stone*, requires courts to balance the concepts of "compelling need and least intrusive alternative" and mandates that this inquiry be considered in light of the particular circumstances of each case.  *Id.*  In applying the *Alcon* test, the *Stone* court noted that "[t]he burden lies with the party seeking discovery . . . to demonstrate a compelling need for the specific information contained within the requested documents.  In responding to the discovery requests, the party opposing discovery can point to other available sources from which the information can be readily obtained." *Id.*  Further, in *Alcon*, the Colorado Supreme Court found that the defendant had not demonstrated a compelling need for the confidential financial information because he had not demonstrated that the information was required in order to defend against the plaintiff's claims.  113 P.3d at 743.  Considering the circumstances of the instant discovery request, this Court likewise finds that the *Alcon* test is more appropriately applied, because the second *Martinelli* factor involving state interests appears to have little applicability where private parties, like Plaintiffs, seek to compel confidential financial information from another private party.

Therefore, pursuant to the first prong of the *Alcon* test, the Court must first consider whether Plaintiffs have demonstrated a "compelling need" for Mr. Schaden's financial

information arising out of the 2006 transaction. *Stone,* 185 P.3d at 158. Plaintiffs allege that they have a "compelling need to know the details of the JP Morgan transaction. . . .The reason is fairly obvious: An individual would be more motivated to engage in fraudulent scheme of the kind and magnitude at issue if, at the end of the day, he were to receive $585 million than he would be if he only received $10." *Reply* [#248] at 7. However, like the case in *Alcon,* this Court finds that Plaintiffs have not demonstrated a compelling need for this confidential information because they have not demonstrated that this information is required in order to prove an element of one of their claims. *See Alcon*, 113 P.3d at 743. Indeed, as Defendants point out, "Plaintiffs already know that Mr. Schaden is an owner of the franchisor and that in May, 2006, Quiznos sold a 49% share of the company to a private investment firm (JPMorgan/CCMP)." *Response* [#246] at 9. The precise amount of Mr. Schaden's financial gain is not an essential element of proof with respect to either liability or damages. Although it is clear that Plaintiffs would like to know the details of the 2006 transaction so as to establish Mr. Schaden's purported "motive," the Court does not find that Plaintiffs require any more information about the 2006 transaction than they already have in order to assert their claims. Accordingly, the Court finds that Plaintiffs have not met their burden of demonstrating a compelling need for this confidential information such that its disclosure could be ordered. *Stone*, 185 P.3d at 159; *Alcon*, 113 P.3d at 743. Because the Court finds that Plaintiffs have not met their burden to demonstrate that the information is relevant, or that they have a compelling need for the information, the Court will not examine whether discovery could be allowed under the "least intrusive alternative."

*Stone,* 185 P.3d at 158.

Accordingly, IT IS HEREBY **ORDERED** that **Plaintiffs' Motion to Compel Deposition Testimony of Defendant Richard E. Schaden** [Docket No. 206; Filed September 26, 2008] is **DENIED**.

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

Dated: January 20, 2009